# NOVEMBER, 1924.

HUGH BROWN v. THE STATE.

No. 8197.    Delivered Nov. 26, 1924.

Rehearing denied Jan. 16, 1925.

**1.—Murder—Charge of Court—On Issue Not Raised—Erroneous.**

There was no evidence in the case of an agreement between appellant, and his two brothers prior to the homicide, to whip or kill the deceased, and the court erred in submitting a charge on manslaughter, predicated on such facts. No affirmative charge should ever be given, unless clearly raised by the evidence in the case.

**2.—Same—Charge on Aggravated Assault—Failure to State Punishment.**

In a special charge given by the court the jury are instructed that under certain contingencies appellant would not be guilty of more than an aggravated assault, but nowhere do we find, either in the main charge or the special charge the definition of an aggravated assault, or the punishment affixed thereto by statute. Under this charge it would not have been possible

for the jury to have found appellant guilty of an aggravated assault. The facts clearly raised the issue of an aggravated assault, and the court erred in failing to properly submit that issue, in his charge.

Appeal from the District Court of Swisher County. Tried below before the Honorable R. C. Joiner, Judge.

Appeal from a conviction of manslaughter, penalty, five years in the penitentiary.

*A. B. Martin* and *C. S. Williams,* of Plainview, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the district court of Swisher county of manslaughter, and his punishment fixed at five years in the penitentiary.

The case presents many difficulties on both law and facts. Deceased had married a sister of John, Jim and Hugh Brown. He had had trouble with Jim some time before the fatal difficulty out of which this killing grew, and bad blood had followed. On the occasion of the killing deceased and his wife were at the home of another one of the Brown girls who had married a man named Marrs. Appellant, in a car with his two brothers and two other men, drove up. John Brown got out of the car with a steel rod in his hands with the apparent intention of placing said rod on the car of deceased. Deceased was in the yard and forbade John doing so. After some words John struck deceased on the head with said rod, following which John was either knocked down by deceased who jumped on him and began fighting him and biting him in the shoulder, or deceased struck John and was clinched with him and biting him in the side when appellant got out of the car and struck deceased over the head with an automobile pump. Marrs testifies that he then pushed appellant back. At or about this time Jim Brown got out of the car with a pistol and fired three shots into the body of deceased whose death followed in a few minutes. The doctor who examined the body of deceased said that his death was caused by the pistol shots, though in his opinion one who struck another upon the head with the automobile pump in question could inflict death. The wife of deceased, testifying for the State, said that when appellant struck deceased on the head with the automobile pump, the latter walled his eyes, a death look came in his face and he went limp. One of the men who came up with the Brown brothers but did not get out of the car, testified for the defense. On cross-examination the State asked him if there was not an agreement between the parties in the car that John Brown was to jump on deceased and start the fight and if he could not handle him the others were to help. This

was denied. The State then asked said witness if he had not made a statement to Mr. and Mrs. Reynolds that there was such an agree-ent. This was denied. In its rebuttal the State put Mr. Reynolds on the stand and proved by him that this witness did make to him and his wife the statement referred to.

We have been unable to find anything in this record upon which to predicate the theory of self-defense. It is undisputed that John Brown struck deceased upon the head with the steel rod and that this was the first blow in the difficulty which ended in the killing. In two paragraphs of the court's charge there was an express reference to a former agree-ment on the part of the parties in the car to whip or kill deceased. Save as such agreement might be implied from an acting together of John and Jim Brown and appellant, there seems nothing in the record to support the charge given. The trial court properly limited the jury's consideration of the statement made by the witness Reynolds to its effect as impeaching the credibility of the witness Rizer. We think the court erred in instructing the jury with reference to a "former agree-ment to whip or kill Cox."

The eleventh paragraph of the charge is as follows:

"You are instructed that if you believe from the evidence that prior to the death of Josh Cox there had been an agreement to whip or as-sault the said Josh Cox by the defendant and Jim Brown and John Brown, and that in an attempt to carry out such agreement, if any, Jim Brown, without knowledge of the defendant, shot and killed said Josh Cox, then in that event the defendant would be guilty of no higher offense than manslaughter."

This was excepted to upon the proposition that the facts therein stated by the court might show appellant guilty of no more than ag-gravated assault, and also that same laid emphasis on a matter not supported by the evidence, viz: an agreement to whip or assault de-ceased. The general charge was also excepted to for its failure to sub-mit the law of aggravated assault. We also find in a special charge given by the court an instruction to the jury that under certain con-tingencies appellant would not be guilty of more than aggravated as-sault, but nowhere in the charge or in any special charge given do we find the definition of the offense of aggravated assault or any state-ment of the punishment affixed thereto by statute.

We think the court erred in not submitting the law of aggravated assault and applying it to the facts. We think the court properly told the jury that if Jim Brown not under circumstances which would re-duce the offense to manslaughter, did with malice aforethought kill Cox and that appellant was present and knowing the unlawful intent of Jim, aided him by acts or encouraged him by words, they would convict him of murder. The jury having acquitted appellant of mur-der by their manslaughter verdict herein, upon a proper application of the law to the facts and even if the jury believed appellant to be

guilty of homicide, upon another trial they could convict him of no more than manslaughter.

In our opinion the court should instruct the jury the law in addition to that of principals, upon the question of guilt as dependent upon the facts and intent of appellant alone. According to the testimony of the doctor he used a weapon capable of inflicting death. If he had formed and entertained an intent to take the life of deceased by striking him with the pump and such was his purpose and intent in so doing, he would seem to be guilty of assault with intent to murder. If, aside from any acting together with his brothers, he struck deceased on the head with a deadly weapon or inflicted upon him serious bodily injury, he would be guilty of an aggravated assault even though he was not a principal with Jim Brown in the acts of the latter.

We observe in this connection that where the affirmative theory of a conspiracy or the law of principals is given, the converse should also be clearly stated.

Believing the court erred in not submitting the law of aggravated assault and in instructing the jury upon a former agreement to whip or kill Cox, as same appears in the charge, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*