Thomas Howard Earl SAMUEL, Appellant,

v.

The STATE of Texas, Appellee.

No. 44578.

Court of Criminal Appeals of Texas.

Feb. 9, 1972.

Rehearing Denied March 29, 1972.

Kerry P. FitzGerald, James P. Finstrom, Dallas, for appellant.

Henry Wade, Dist. Atty., and John B. Tolle, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for assault with intent to commit murder with malice aforethought where the punishment, assessed by the jury, was 25 years.

Initially, appellant challenges the sufficiency of the evidence to sustain the conviction, particularly contending that it fails to show malice or the specific intent to kill.

At approximately 11 p. m. on July 26, 1969, Dr. Elza Lowell Whitley, his wife and mother-in-law returned to the city of Dallas from a trip to east Texas. As he drove his Dodge mobile camper near the parking lot of the Metropole Apartments where his mother-in-law resided, Dr. Whitley testified he observed a group of five to seven persons near the entrance to the lot; that in his rear view mirror he saw the appellant hit the side of the camper with his hands and yell, "Oh, you ran over me."

After Whitley parked on the lot he heard someone ask "Why did you run over this boy?" He related he walked to the rear of the camper and told the group, "I didn't run over anybody, I am a doctor. I am Dr. Whitley," to which the appellant replied, "What do you mean you didn't run over me?" At this point Whitley testified that appellant stabbed him by his left shoulder and on the right side with a knife and he yelled for the dog that was in the camper; that appellant then handed the knife to another man beside him and they all ran.

Whitley went immediately to Parkland Hospital where he related it was determined that his right lung had collapsed and his left lung was partially collapsed from his wounds. He received immediate treatment and remained from Saturday night until the following Thursday when he was released at his own insistence.

Dr. Otis Ison, Chief Surgery Resident at the hospital, testified he treated and performed surgery upon Whitley for a stab wound in the right back just below the shoulder blade and another wound in the

left front chest cavity in the left intraventricular area. This latter wound, "three to four centimeters in width," was actively bleeding and was spurting blood upon arrival at the hospital. Dr. Ison testified the knife or instrument used to inflict the puncture type wounds was "two to three centimeters in width." He estimated that without treatment Whitley would have died within four to six hours.

Arlene Whitley substantially corroborated her husband's version of the events at the parking lot. Like her husband, she denied that their Great Dane dog ever left the camper or that her husband was armed. Both, in fact, denied they had any pistol or other weapon.

Testifying in his own behalf, the 18 year old appellant stated he had attended a party and was waiting near the parking lot for a ride home when the driver of the camper motioned for him to cross the street and that when he did the camper sped forward causing the mirror on the vehicle to strike him and knock him to the ground; that when he and his friends followed to get the license number Dr. Whitley turned a Great Dane loose on the group and that only after the dog had been returned to the camper he asked Whitley about running over him; that Whitley denied the accusation and began to scuffle with him and then struck him on the side of the head with a pistol which discharged; that it was at this time he stabbed Whitley and ran and threw the knife away.[1]

He related that he did not intend to kill Whitley and had only intended to get the license number of the vehicle and to talk to the driver.

Appellant's sister and Ricky Mayberry testified to substantially the same facts as did the appellant. His mother testified she subsequently picked up the appellant and her daughter that night and that appellant's face was swollen and bleeding and a day or so later he was treated by a doctor.

Among other things the court charged the jury on assault to murder with malice, assault to murder without malice, the requirement of a specific intent to kill, aggravated assault and on the law of self-defense. The jury by its verdict rejected appellant's version of the facts.

Considering the evidence in the light most favorable to the jury's verdict, as we are required to do, Hall v. State, 418 S.W.2d 810, 812 (Tex.Cr.App.1967), we deem the evidence sufficient to support the same as to a finding of malice. The existence of malice aforethought can be inferred from acts committed or words spoken. See 4 Branch's Ann.P.C., 2d ed., Sec. 1809, p. 172.

Further, in Hall v. State, supra, this court said:

"It is well established that a specific intent to kill is an essential element of the offense of assault to murder. The intent to kill is a fact question, the existence of which must be determined by the

---

1. On cross-examination the appellant was asked to describe his knife but all this record reveals is the following:

"Q. You want to describe that knife for us?

"A. Well, I couldn't exactly tell you how it looked, I can tell you just about the size of it.

"Q. Why don't you do that?

"A. I say it was about this long (indicating).

"Q. That's the blade, right?

"A. This was the blade and all.

"Q. You are telling us it was that long with the handle and the blade?

"A. That's right.

"Q. Point out and show us how long the blade was.

"A. The blade would be no more than this long (indicating).

"Q. How far would you estimate that to be?

"A. I really don't know."

Trial attorneys should never forget that the "cold record" is not going to reflect how long "this long" (indicating) or "that long" actually is anymore than distance is reflected by a witness saying without more "It was about as far as from here to over there."

trier of the facts, judge or jury, from the evidence and cannot be presumed as a matter of law. Hunter v. State, 161 Tex.Cr.R. 225, 276 S.W.2d 803."

In Kincaid v. State, 150 Tex.Cr.R. 45, 198 S.W.2d 899 (1946), this court wrote:

"The intent to kill is a question of fact to be determined by the jury from all the facts and circumstances in evidence. The intent is hardly ever provable by direct testimony, but is to be inferred from acts, words and conduct of the party accused."

And in Young v. State, 384 S.W.2d 710, 711 (Tex.Cr.App.1964), it was stated:

"Specific intent to kill is an essential element of the offense of assault with intent to murder. Art. 1160 Vernon's Ann.P.C. Such intent may be inferred. 'If the weapon used is not deadly, the intent to kill * * * may be ascertained from and shown by the surrounding facts and circumstances.' Ammann v. State, 145 Tex.Cr.R. 34, 165 S.W.2d 744. In the case at bar the wound was so serious that in the absence of proper care the wound probably would have produced death. The jury was warranted in concluding from the seriousness of the wound that the instrument used to inflict the lacerations and puncture was, from the manner of its use, a deadly weapon, and that the appellant intended to kill Burton Glenn Howard. Butler v. State, 131 Tex.Cr.R. 543, 100 S.W.2d 707; Rose v. State, 123 Tex.Cr.R. 261, 58 S.W.2d 526." See also Barnes v. State, 172 Tex.Cr.R. 303, 356 S.W.2d 679 (1961); 4 Branch's Ann.P.C., 2d ed., Secs. 1812–1815, pp. 172–175. See also Williams v. State, 437 S.W.2d 568.

Conceding that the punishment assessed is within the range of penalty prescribed by the Legislature in Article 1160, Vernon's Ann.P.C., appellant nevertheless contends the 25 years assessed constitutes cruel and unusual punishment in violation of Article I, Sec. 13, Texas Constitution, Vernon's Ann.St., and the Eighth Amendment to the United States Constitution.

Appellant contends that the discretion afforded a jury in assessing punishment must be exercised within the bounds of reason and justice and that when the jury abuses that discretion, by assessing a punishment not commensurate with the facts of the case, then this court should set the same aside on the basis of cruel and unusual punishment.

He relies on language in some cases rejecting the claim of cruel and unusual punishment since the penalty assessed was within the limits prescribed by law but adding that the accused had a prior criminal record, Griggs v. State, 451 S.W.2d 481 (Tex.Cr.App.1970), or stating, "Moreover, the facts, as developed on the trial, show an aggravated case, one which would justify a severe punishment." Stroud v. State, 145 Tex.Cr.R. 264, 167 S.W.2d 526 (1943). See also Robinson v. State, 25 Tex.App. 111, 7 S.W. 531, 532 (1888).

Appellant also quotes from Nelson v. State, 113 Tex.Cr.R. 632, 21 S.W.2d 1045 (1929), where this court said:

"There is not [sic] intent to assert that there might not be circumstances which would impel this court to order a reversal for the reason that the verdict was excessive and totally out of proportion to the injury done." See also Reeves v. State, 167 S.W.2d 176 (Tex.Cr.App. 1942); Calhoun v. State, 85 Tex.Cr.R. 496, 214 S.W. 335 (Tex.Cr.App.1919).

■ We recognize the language in many of these cases indicates that this court has the power to review the question of whether the punishment assessed in a particular case is excessive. Nevertheless, this court has frequently stated that where the punishment assessed by the judge or jury was within the limits prescribed by the statute the punishment is not cruel and unusual within the constitutional prohibition. See Lambright v. State, 167 Tex.Cr.R. 96, 318 S.W.2d 653 (1958); Darden v.

State, 430 S.W.2d 494, 496 (Tex.Cr.App. 1968) and cases there cited; Sonderup v. State, 418 S.W.2d 807 (Tex.Cr.App. 1967); 16 Tex.Jur.2d, Criminal Law. Sec. 19.

 We do not find a constitutional violation here involved nor consider under the circumstances presented that the jury verdict was excessive.

Finally, we find no merit in appellant's claim that his retained trial counsel was ineffective.

The judgment is affirmed.

MORRISON, J., not participating.