**Billy Joe SMITH, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 13–81–131–CR.

Court of Appeals of Texas, Corpus Christi.

Sept. 16, 1982.

Rehearing Denied Oct. 14, 1982.

J. Douglas Tinker, Tinker & Tor, Corpus Christi, for appellant.

Wm. B. Mobley, Jr., Dist. Atty., Corpus Christi, for appellee.

Before BISSETT, YOUNG and KENNEDY, JJ.

## OPINION

KENNEDY, Justice.

Appeal is taken from conviction for voluntary manslaughter for which punishment was assessed at ten years. We affirm.

The theory propounded at trial by appellant was accident. The deceased died as a result of a gunshot wound to the chest. Appellant did not deny that he had the gun in his hands at the time it discharged. The incident occurred on the beach at Padre Island on April 28, 1979. There were a number of people in the vicinity at the time, most of whom, including appellant and the deceased, Bruce Benham, had been drinking quite a bit over the period of the preceding day or two. It was appellant's testimony at trial that at the time of the incident Benham was quite drunk, but that he (appellant) was not. He testified that he was in the midst of a group of people engaged in conversation when the deceased, suddenly and with neither warning nor apparent reason, came charging at him with a knife in his hand. Appellant stated that he picked up the shotgun and fired once or twice into the sand in front of Benham, but that the deceased kept coming toward him and grabbed hold of the barrel of the shotgun; that the two then proceeded to wrestle over possession of the gun. According to appellant, this tussle took the two of them around to the other end of the car beside which they were standing, at which point the gun accidentally discharged.

The State introduced a statement made by appellant the day after the shooting which reads, in pertinent part:

"At about 5:00 p.m. 04/28/79 we were all standing around Pat's car talking. Bruce Benham kept butting into our conversation, and I told him to shut up. We were all drinking at the time and all of us were drunk. Bruce kept butting in and I told him to get out of my face. I then saw him come towards me with what I thought was a knife. I had already had the shotgun in my hands when he came at me. We had been shooting all during the day with the shotgun. I then shot into the ground three times and tried to scare Bruce away. Bruce then fell to his knees and reached for the barrel of the shotgun. I pulled away and Bruce started to run backwards towards the rear of the car. I followed him around the rear of the car and on around the front where Bruce took hold of the barrel of the gun and pulled it towards him and the gun went off."

The testimony of the other witnesses who were in the vicinity at the time of the incident tended to corroborate appellant's version of the occurrence to the extent that they established that appellant and the deceased exchanged heated words, that appellant fired twice into the sand at the feet of the deceased, and that the deceased then lunged for the weapon, grabbing it, and that a fight for control ensued. None of the witnesses who testified had a clear view of the two at the moment of the third and fatal shot. None of the testifying witnesses saw a knife in Benham's hand, and an apparently thorough search of the area by the police afterwards failed to turn up one.

The gun which caused the death was a pump style shotgun. It was necessary for appellant to manually eject the spent shell from the chamber after each shot and to reload by pumping in another one. It appears that the entire incident, from the time of the first shot, took approximately 45 seconds.

In his first grounds of error appellant attacks the sufficiency of the evidence to support the finding of voluntary manslaughter, that offense being the commission of murder [1] under the immediate influence of sudden passion arising from an adequate cause. Tex.Penal Code Ann. § 19.04.

---

1. Tex.Penal Code Ann. § 19.02. Appellant was charged under Section (a)(1) of this statute, that is, intentionally or knowingly causing the death of an individual.

That statute defines "sudden passion" and "adequate cause" as follows:

"(b) 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(c) 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." § 19.04(b) & (c).

Thus, the offense of voluntary manslaughter, a lesser included offense of murder, is essentially the commission of murder under mitigating circumstances. Appellant asserts that the evidence adduced at trial is insufficient to show either intent or the existence of sudden passion and adequate cause.

■ Whether appellant had the requisite intent is a question of fact for the jury who may infer it from any facts in evidence which to their minds proves its existence. *Samuel v. State,* 477 S.W.2d 611, 614 (Tex. Cr.App.1972); *Hunter v. State,* 468 S.W.2d 96, 99 (Tex.Cr.App.1971); *Hunter v. State,* 161 Tex.Cr.R. 225, 275 S.W.2d 803, 804 (Tex. Cr.App.1955). It is hardly ever provable by direct evidence. *Samuel,* supra. If the jury chose not to believe appellant's assertion that the gun in his hands discharged accidentally, that was their prerogative as fact finders. Considering the evidence in the light most favorable to the jury's verdict as we are required to do, we deem the evidence sufficient to support same as to a finding of intent.

■ The jury was charged on the lesser included offense of voluntary manslaughter over appellant's objection. We agree with him that the evidence does not support a finding of sudden passion and adequate cause. The trial court is required to charge the jury on a lesser included offense only when an issue as to such is raised by the evidence. *Thomas v. State,* 578 S.W.2d 691, 698 (Tex.Cr.App.1979). We re-affirm this rule of law and do not intend to weaken it. However, for reasons peculiar to the relationship which the offense of voluntary manslaughter holds to that of murder, we hold that the trial court did not commit reversible error in charging on the lesser included offense in this case.

■ Acting "under the immediate influence of sudden passion arising from an adequate cause" is not an element of the offense of voluntary manslaughter which must be proved by the State, but is instead in the nature of a defense to murder that reduces that offense to voluntary manslaughter. *Humphries v. State,* 615 S.W.2d 737, 738 (Tex.Cr.App.1981); *Braudrick v. State,* 572 S.W.2d 709, 710 (Tex.Cr.App. 1978). Thus, without that finding the jury would have been entitled to convict appellant of the greater offense of murder. Reduced to fundamentals, the trial court asked the jury: "did Billy Joe Smith intentionally or knowingly cause the death of Bruce Benham?" The jury answered: "Yes, but ...." We have no reason to believe, and we are not willing to assume, that had they not had the opportunity to qualify their response it would have been given in the negative. It becomes clear, then, that the charge on the lesser included offense worked to appellant's benefit rather than to his harm. That being the case, appellant cannot now be heard to complain of a conviction for the lesser included offense. See *Nielson v. State,* 437 S.W.2d 862, 866 (Tex.Cr.App.1969). In so holding we reiterate that our decision is predicated upon the peculiar relationship between these two offenses, taken in conjunction with the facts of this individual case, and emphasize our desire that it be construed narrowly.

Nor is there merit to appellant's contention that the charge on voluntary manslaughter is a defensive issue which may only be submitted when requested by the accused. See *Humphries v. State,* supra, 615 S.W.2d at 738. No reversible error is shown, and appellant's first three grounds of error are overruled.

■ In his fourth ground of error appellant complains of the submission of the voluntary manslaughter charge contending that such permits a conviction under a charge for which he had not been indicted. No complaint is made regarding the adequacy of the indictment for the greater charge. When, as here, the greater charge is properly alleged, it necessarily includes all of the lesser included offenses. *Allison v. State*, 618 S.W.2d 763, 764 (Tex.Cr.App. 1981). This ground is overruled.

■ In his next three grounds of error appellant contends that the trial court abused its discretion in denying his motion for continuance due to the absence of three witnesses who were in the vicinity at the time of the shooting. It was appellant's contention that the testimony of these three would support his theory of accidental shooting, and he requested the trial court, in ruling on his motion, to review their testimony given to the grand jury. The trial court refused to do so, but attached a transcript of said testimony for this Court's perusal. We have reviewed that testimony and note that none of the witnesses were looking at the deceased and appellant at the time of the shooting, none of them witnessed an argument between the two, and none of them saw a knife in the deceased's hand. The testimony of these witnesses was not of the required material nature so as to warrant the granting of a continuance to procure their presence, and no abuse of discretion is shown. Grounds of error five, six, and seven are overruled.

In grounds of error eight through twelve appellant complains of the trial court's failure to turn over to him the grand jury testimony of the three aforementioned witnesses, and the affidavits of two of them, claiming that such contained mitigating and exculpatory evidence. Our review of these items reveals that the testimony and statements sought were neither mitigating nor exculpatory. For the reasons set forth in our discussion of grounds five through seven, we overrule these grounds of error as well.

■ Complaint is made in the next three grounds of error of the trial court's refusal to turn over to appellant the grand jury testimony of two witnesses who did testify in order that he might use it for purposes of cross-examination, and in permitting the State to use the grand jury testimony of a third witness when cross-examining that witness. The rule regarding the production of the grand jury testimony of a witness is that such lies within the sound discretion of the trial court and a "particularized need" must be shown by the accused so as to outweigh the traditional policy of grand jury secrecy. *McManus v. State*, 591 S.W.2d 505, 523 (Tex.Cr.App.1980); *Martin v. State*, 577 S.W.2d 490, 491 (Tex.Cr.App. 1979); *Mott v. State*, 543 S.W.2d 623, 625–26 (Tex.Cr.App.1976). No "particularized need" has been alleged or shown.

■ As concerns the grand jury testimony of the witness Smith, which was used by the State for cross-examination purposes, the trial court permitted production of it for appellant when the State had finished, and called a recess before redirect examination so that counsel for appellant might review it. This action was in keeping with the rules regarding production of grand jury testimony once portions have been introduced by the State. *Martin v. State*, supra; *Garcia v. State*, 454 S.W.2d 400, 403 (Tex.Cr.App.1970). Grounds thirteen, fourteen, and fifteen are overruled.

During direct examination, Officer Garcia, the first officer on the scene following the shooting, testified that appellant came to notify him, and that appellant's first words to him were: "I have just killed a man on the beach." On cross-examination Officer Garcia stated that appellant had actually said: "I have just killed a man on the beach and I didn't mean to do it." It then developed that there were three witnesses to this who were not called to testify and that the State had their statements to this effect in its possession. It is appellant's contention in grounds of error sixteen, seventeen and eighteen that the State's failure to disclose the statements to

him constitutes reversible error. We do not agree.

It is true that a conviction must be reversed if the prosecutor actively suppresses evidence which may exonerate the accused or be of material importance to the defense. *Ridyolph v. State,* 503 S.W.2d 276, 278 (Tex.Cr.App.1974); *Crutcher v. State,* 481 S.W.2d 113, 115 (Tex.Cr.App.1972). The standard to be applied in determining whether reversible error has been committed is whether the evidence may have had an effect on the outcome of the trial. *James v. State,* 563 S.W.2d 599, 604 (Tex.Cr. App.1978); *Love v. State,* 533 S.W.2d 6, 9 (Tex.Cr.App.1976). We find the instant case to be analogous to *James,* supra, wherein the defendant was able to elicit the undisclosed testimony at trial. As in that case, we cannot perceive how the defendant could have utilized the nondisclosed evidence in a manner that may have had an effect on the outcome of the trial. We overrule these three grounds of error.

Appellant next asserts that reversible error was committed by the State's questioning of its witness Mattheu. On direct and cross-examination the witness had referred to some target shooting that had occurred on the day in question. In particular, he spoke of appellant shooting at a ball with the shotgun immediately prior to the shooting of the deceased. On direct examination, the witness testified as follows:

"Question (by the District Attorney): Did you see the first shot fired?

Answer: At what, the ball?

Question: Or anything. Did you see it fired at anything?

Answer: No.

Question: And the second shot?

Answer: No.

Question: And the third shot?

Answer: If there was one. I wasn't paying no attention [sic] to what they were doing out there.

Question: What about this ball you keep talking about out there?

Answer: You're the one that mentioned the ball.

Question: I don't recall asking you about a ball.

Answer: In your room you did.

Question: I'm asking you now. In my room? What room?

Answer: In your office.

Question: When did I talk to you about it?

Answer: Monday morning.

Question: And I asked you about a ball?

Answer: Yes.

Question: Tell us about it. Tell us about the ball.

Answer: You said they were shooting at a ball. I said they were shooting at something out there.

Question: Did you see them shooting at a ball?

Answer: No, I wasn't paying no attention [sic] to them out there.

Question: Then you can't testify what they were shooting at?

Answer: No.

Question: Did you see anyone throw this object in the air—State's Exhibit 33—and shoot at it?

Answer: No."

Appellant now complains of the following colloquy between the District Attorney and the witness Mattheu on re-direct, it being his position that such constitutes an impermissible attempt by the State to impeach its own witness.

"Answer: In my statement, did I say anybody was shooting guns?

Question: Yes.

Answer: No, I didn't even say I was shooting guns.

Question: All right then, have you ever told anyone before that someone was shooting that shotgun earlier out there?

Answer: What, since now?

Question: Yeah.

Answer: No, because he asked me for a brief statement. The Texas Ranger asked me for a brief statement, and that's what I give him [sic], a brief one.

Question: It was after Mr. Tinker talked to you today at recess, is that when you decided you heard some shotgun shots earlier that afternoon?

Answer: No, no. See, nobody asked the questions before.

Question: They weren't asked of you at the grand jury session in Kleberg County?

Answer: I told them we were shooting at the bottles out front.

Question: I thought you were shooting the .22 in the back."

The term "impeachment," whether taken narrowly or broadly, necessarily implies an attack on the credibility of the witness. 62 Tex.Jur.2d *Witnesses* § 221, p. 154. Taking the testimony of the witness as a whole, and the fact that appellant's objection regarding the grand jury testimony was sustained before an answer was given, we do not believe that the complained of exchange constituted impeachment. See *Bates v. State,* 409 S.W.2d 860, 861 (Tex.Cr.App. 1967). Ground of error nineteen is overruled.

■ Complaint is next made of the trial court's denial of appellant's request for statements of others used by the witness Mosely to refresh his memory prior to testifying, it being his contention that such request falls within the "Gaskin Rule,"[2] which provides that the defendant is entitled to statements made by the witness prior to testifying for purposes of cross-examination and impeachment. It is now well settled, however, that that rule applies only to statements made by the witness himself. *Mendoza v. State,* 552 S.W.2d 444, 447–48 (Tex.Cr.App.1977); *Gilbreath v. State,* 500 S.W.2d 527, 528 (Tex.Cr.App. 1973). Such is not the case here. The ground of error is without merit.

■ In his final two grounds of error appellant asserts reversible error in the State's closing argument. Ground number twenty-one regards the prosecutor's statement, referring to appellant, that: "He knows these constitutional warnings that he

was given, we know had to have been given him another time when he was . . . ." Appellant cut the remark short at this point with an objection which was sustained and followed with an instruction to the jury to disregard. It is obvious that the prosecutor was attempting to make reference to an extraneous offense which was not in evidence. We are not of the opinion, however, that reversible error was committed in denying appellant's motion for mistrial.

■ The test as to whether an improper argument constitutes reversible error is whether (1) it is manifestly improper, harmful or prejudicial, or (2) it is violative of a statute, or (3) it injects a new and harmful fact into the case. *Thompson v. State,* 480 S.W.2d 624, 630 (Tex.Cr.App.1972). The harmful effect of an improper argument is generally cured by an instruction to disregard. *Stein v. State,* 514 S.W.2d 927, 931 (Tex.Cr.App.1974); *Thompson v. State,* supra. In *Stein,* supra, the complained of comment made by the prosecutor made reference to extraneous offenses not in evidence. Speaking of the defendant, the State's attorney said: "He's certainly aware of these things with all of his experience in the courtroom." 514 S.W.2d at 931. The Court held that error, if any, was cured by the instruction to disregard. Appellant's twenty-first ground of error is overruled.

We find the comment made the basis of complaint in ground of error number twenty-two somewhat more disturbing. As already discussed, appellant made a motion for continuance in order that he might try to find three missing witnesses, and moved to have their statements and grand jury testimony released to him. In his closing argument the District Attorney referred to two of these witnesses and stated that "if [they] or anybody else could say differently, they would be here." Appellant's objection, in which his motion for continuance and the fact that the witnesses were unavailable were mentioned, was sustained and an instruction to disregard was given.

2. *Gaskin v. State,* 172 Tex.Cr.R. 7, 353 S.W.2d    467 (Tex.Cr.App.1962).

It is permissible for the State to comment on an accused's failure to call competent and material witnesses. *Kerns v. State,* 550 S.W.2d 91, 96 (Tex.Cr.App. 1977). If, as here, the prosecutor's remarks refer to the defendant's failure to present evidence through witnesses other than himself, reversal is not required. *McMahon v. State,* 582 S.W.2d 786, 791, (Tex.Cr.App. 1978), *cert. denied* 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 175 (1979).

While the prosecutor's comment in the instant case appears to have been nothing short of a deliberate attempt to mislead the jury, a practice which we cannot countenance, we will look at the effect of the remark and not the intent of the speaker. The error here was not of such magnitude as not to have been cured by the court's instruction. Appellant's last ground of error is overruled, and the judgment of the trial court is AFFIRMED.

### APPELLANT'S MOTION FOR REHEARING

On motion for rehearing appellant raises the issue of the effect of Art. 37.14, Tex. Code Crim.Pro., which states that when a defendant is convicted of a lesser included offense of that with which he is charged, such conviction serves as an acquittal of the higher offense. It is appellant's position that the conviction for voluntary manslaughter necessarily implies an acquittal for murder, and that if the evidence does not support the findings regarding sudden passion and adequate cause then the present conviction must be reversed.

This Court recognizes the applicability of Art. 37.14 to convictions for manslaughter, when murder is the offense charged. See *Brown v. State,* 99 Tex.Cr.R. 19, 267 S.W. 493, 494 (Tex.Crim.App.1925). As we read Art. 37.14, it addresses itself to the issue of acquittal for double jeopardy purposes. It does not mean, in the instant case, that the elements of the greater offense have been found not to exist. Again, it must be borne in mind that an affirmative finding concerning the elements of voluntary manslaughter necessarily includes the same for the elements of murder. Compare Tex.Penal Code § 19.02 with § 19.04(a).

Nor can we agree with appellant that we are applying different, inconsistent standards for the State and defendant in determining the propriety of charging the jury on the lesser included offense. A defendant is entitled to the requested charge only when the evidence raises such issue that he, if guilty, is guilty only of the lesser offense. *McBrayer v. State,* 504 S.W.2d 445, 447 (Tex.Cr.App.1974). Our opinion does not set a less stringent standard for determining the propriety of charging on the lesser offense when requested by the State, and should not be interpreted as such. Rather, we hold that no reversible error was committed in that the evidence would have supported a conviction for the greater offense.

Appellant's motion for rehearing is OVERRULED.