Rooks v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-084-CR

        ALDRICH ADWAR ROOKS,
                                                                                       Appellant
        v.

        THE STATE OF TEXAS,
                                                                                       Appellee

 

From the 13th District Court
Navarro County, Texas
Trial Court # 24,003
                                                                                                                

O P I N I O N
                                                                                                                
 
          Aldrich Rooks, who received sixty years for the aggravated sexual assault of a thirteen-year-old girl, contends the court erred when it denied his Batson motion and refused to allow him
to question the victim during the punishment phase about her prior sexual history. We affirm.
JURY SELECTION
          Rooks and the victim are black. The State peremptorily struck four blacks (Edmerson,
Johnson, Driver, and Ellison) and a Hispanic (Gonzales) from the venire. Rooks and the State
both struck another black (Curry). A Hispanic served on the jury.
          Rooks asked the court to discharge the venire on the ground that the State's strikes were
racially based. See Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). 
At the Batson hearing, the prosecutor testified that he struck Edmerson, Johnson, Driver, and
Ellison because they indicated that they knew Rooks, his family, or one of his co-defendants. The
prosecutor also struck Driver and Ellison because his office had prosecuted their relatives. 
Gonzales was peremptorily challenged, according to the State, after the prosecutor overheard him
tell the bailiff that he was reluctant to serve on the jury because he did not speak or read English
well. 
          These reasons are facially race-neutral. See DeBlanc v. State, 799 S.W.2d 701, 713 (Tex.
Crim. App. 1990), pet. dism'd, improvidently granted, 792 S.W.2d 81 (Tex. Crim. App. 1990)
(jurors knew the defendant or his family); Sims v. State, 768 S.W.2d 863, 865 (Tex.
App.—Texarkana 1989), pet. dism'd, improvidently granted, 792 S.W.2d 81 (Tex. Crim. App.
1990) (juror's kinship with a person who has trouble with the law); Tompkins v. State, 774
S.W.2d 195, 204-05 (Tex. Crim. App. 1987) (poor reading and writing skills).
          However, the prosecutor also said that he struck the black jurors at the request of the
victim's mother, who admitted that she did not know them personally but assumed they would be
sympathetic to the defense. She reached this conclusion based on the jurors' addresses, which
indicated that they lived in the same part of town where Rooks and most other blacks reside. She
denied basing her recommendations on race, but claimed they were based solely on the assumption
that the jurors knew Rooks or his family because they lived near each other. In fact, she said she
did not know whether the jurors she asked the prosecutor to strike were black or white. Rooks
argued that her reasons were racially based. The prosecutor claimed, however, that he would have
used peremptory strikes against these jurors for the other reasons he stated, regardless of the
mother's recommendations.
          A disagreement arose at the hearing over how many jurors indicated that they knew Rooks
or his co-defendants. Rooks insisted that only two black jurors raised their hands; the prosecutor
said all the black jurors he struck had raised their hands. Having observed the proceedings, the
court could resolve this dispute in the State's favor, as it apparently did. Moreover, the court had
the right to judge the credibility of the prosecutor and the victim's mother. See Whitsey v. State,
796 S.W.2d 707, 716 (Tex. Crim. App. 1989) (on rehearing). Following the Batson hearing, the
court found that the State's strikes were not racially motivated and denied the motion to discharge
the panel.
          The State cannot escape responsibility for its peremptory challenges by relying on another's
recommendations. By adopting the mother's recommendations, it also adopted her reasoning. 
Assuming that her recommended strikes were based in part on race, we are still not automatically
required to reverse the judgment. Race, as long as it is not the reason for a strike, can coexist
with a non-racial reason. Hill v. State, No. 347-90, slip op. at 14 (Tex. Crim. App. January 8,
1992). If a juror would have been struck for reasons related to the case being tried, even the
mention of race as a basis for a strike will not necessarily establish a Batson violation. Id. at 13.
          That race played "a part" in the peremptory strikes that Rooks challenges cannot be
seriously doubted. These facts demonstrate the difficulty that both trial judges and reviewing
appellate courts face in attempting to determine the subjective reasons for peremptory strikes
against minority jurors. Thus, this is exactly the type of case that would benefit from the "bright-line rule" advocated by Judge Baird in his concurring opinion in Hill. See id., slip op. at 9 (Baird,
J., concurring).
          Notwithstanding the mother's reasons, the prosecutor gave facially race-neutral
explanations for the strikes. Under the circumstances, Rooks must show that these other reasons
were a pretext for discrimination. See id. at 15.
          The record does not show that they were pretexts for racial strikes. Considering the voir
dire and the record of the Batson hearing, Rooks has not shown that the court's finding was clearly
erroneous. See Whitsey, 796 S.W.2d at 726. Point one is overruled.
EXCLUDING VICTIM'S SEXUAL HISTORY
          Rooks' second point is that the court erred during the punishment phase when it refused
to allow him to cross-examine the thirteen-year-old victim about her prior sexual experience. 
While the jury was deliberating on guilt-innocence, the court held a hearing in chambers to
determine whether evidence of the victim's promiscuity would be admitted. Rooks questioned the
victim and another witness about the victim having sex with persons other than Rooks. The court
sustained the State's objection and excluded the evidence.
          Rooks contends the excluded evidence was relevant to punishment because the jury might
have assessed a lesser sentence if they had known she had engaged in numerous sexual encounters
with multiple partners. That is, they might have believed his contention that she consented to the
sexual act. He also argues that the evidence was admissible to show her bias and motive.
          When a victim is under fourteen years of age, the defendant in an aggravated sexual-assault
trial cannot introduce evidence of the victim's sexual conduct to establish a defense. Tex. R.
Crim. Evid. 412(e). Moreover, evidence of the victim's promiscuity was not admissible on
punishment because it was irrelevant to Rooks' character. See Tex. Code Crim. Proc. Ann. art.
37.07(3)(a) (Vernon Supp. 1992); White v. State, 444 S.W.2d 921, 923 (Tex. Crim. App. 1969). 
Thus, the court did not abuse its discretion when it excluded the evidence. Point two is overruled
and the judgment is affirmed.
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice
Before Chief Justice Thomas,
          Justice Cummings and
          Justice Vance
Affirmed
Opinion delivered and filed April 29, 1992
Do not publish 



of the window. Officer Drews was outside the window and saw baggies being
thrown from the window. He later identified Haisler by the wristwatch he wore. The baggies
were identified as 12.53 grams of methamphetamine. Two other persons, one male and one
female, were found in the bathroom. When Haisler was arrested, he was holding a black
cylindrical object—later identified as a baby bottle wrapped in black electrical tape. Officer
Dennis Baier testified that narcotics offenders customarily wrap drug paraphernalia in black tape
so that it may be more easily hidden from law enforcement officers. State's Exhibit 2A, the two
baggies of methamphetamine with a weight of 29.80 grams, was found wrapped in black electrical
tape on the cabinet in the back room where Haisler was found. Other evidence favorable to the
verdict included: mail addressed to Haisler at the 302 S. Charles address; two sets of balance-beam
scales which testimony showed are frequently used to package drugs; a radio scanner used to
monitor police radio transmissions; a pH tester used in the manufacturing process of
methamphetamine; a bottle labeled "drying junk," commonly used to keep moisture out of powder-type substances like cocaine, amphetamine, and methamphetamine; syringes; and $950 in cash.
      Given Haisler's close proximity to the contraband in State's Exhibit 2A, his actions in
throwing the contraband in State's Exhibit 1 out of the window, his close proximity to all of the
other drug paraphrenalia in the back room, and that he received mail at the residence sufficiently
linked him to the methamphetamine. We overrule point three.
      In point four, Haisler complains that the court erred in failing to instruct the jury on a lesser-included offense of simple possession. In determining whether a jury must be instructed
concerning a lesser-included offense, a two-step analysis must be applied. Royster v. State, 622
S.W.2d 442, 446 (Tex. Crim. App. [Panel Op.] 1981) (on rehearing). First, the lesser-included
offense must be included within the proof necessary to establish the offense charged. Id. Second,
there must be some evidence in the record showing that if the defendant is guilty, he is only guilty
of the lesser offense. Id.; see also Moreno v. State, 702 S.W.2d 636, 640 (Tex. Crim. App.
1986). If evidence from any source raises the issue of a lesser-included offense, a charge on that
offense must be included in the court's charge. Saunders v. State, 840 S.W.2d 390, 391 (Tex.
Crim. App. 1992).
      There are two ways in which the evidence may indicate that a defendant is guilty only of a
lesser offense. There may be evidence which negates or refutes other evidence establishing the
greater offense; or, the evidence presented may be subject to different interpretations. Id. at 391-92. Haisler argues that neither of the baggies in Exhibit 2 nor Exhibit 1 contained more than
twenty-eight grams of methamphetamine. Haisler did not testify, but urges on appeal that he could
have been in possession of only one of the three baggies and thus guilty of only the lesser-included
offense of simple possession. 
      The two baggies in Exhibit 2A were bound together with electrical tape and had an aggregate
weight of 29.80 grams. Because the baggies were bound together, if Haisler possessed Exhibit
2A, he necessarily possessed over twenty-eight grams. We overrule point four.
      In point five, Haisler complains that his sentence of forty-years imprisonment and a $15,000
fine is cruel and unusual punishment. See U.S. Const. amend. VIII. Conviction for possession
of methamphetamine more than twenty-eight grams but less than four-hundred grams carries a
sentence of five to ninety-nine years imprisonment or life and a fine not to exceed $50,000. Tex.
Health & Safety Code Ann. § 481.115(d)(1). Haisler's sentence is within these guidelines. 
See id. As a general rule, when the punishment assessed is within the limits prescribed by the
legislature for the offense, it is not cruel and unusual. Samuel v. State, 477 S.W.2d 611, 614
(Tex. Crim. App. 1972); Cadieux v. State, 711 S.W.2d 92, 95 (Tex. App.—Austin 1986, pet.
ref'd). We find no basis in the record for departing from the general rule. See Cadieux, 711
S.W.2d at 95. We overrule point five.
      We affirm the judgment.
                                                                                 BILL VANCE
                                                                                 Justice
Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed February 17, 1993
Do not publish
(OP WITHDRAWN 3-31-93)