NUMBER 13-07-208-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 
 


GABRIELA SALAZAR, 
Appellant,


v.



THE STATE OF TEXAS, 
Appellee.

 
 

On appeal from the 105th District Court 

of Nueces County, Texas

 
 

MEMORANDUM OPINION


Before Chief Justice Valdez, Justices Garza and Vela


Memorandum Opinion by Justice Vela



 Without a plea agreement, (1) appellant, Gabriela Salazar, pleaded "No contest"
to the offense of aggravated robbery. After the trial court found that the stipulated
evidence (2) supported a finding of guilty, the court heard punishment evidence and then
assessed punishment at sixteen years' imprisonment. Appellant's appellate counsel
has filed an Anders brief in which she stated that after reviewing the record, she
perceived three possible issues for review but rejected them as arguable grounds for
reversal. The issues are whether: (1) appellant's nolo contendere plea was knowing
and voluntary; (2) the trial court erred by sentencing appellant to sixteen years'
imprisonment; and (3) trial counsel's failure to present medical testimony regarding
appellant's hospitalization for depression and attempted suicide constituted ineffective
assistance of trial counsel. After thoroughly reviewing the record, we agree that the
appeal is frivolous and affirm.

I. Facts


 The following testimony was elicited at the punishment hearing during which
the State and defense each called three witnesses.

1. State's Witnesses

 Roxanne Gonzalez testified that on September 16, 2006, she and Elida Barbosa
were walking to a friend's house when appellant approached them. Thinking that a
fight was imminent, Roxanne gave her jewelry to Elida for safekeeping. Appellant
demanded a chain from Roxanne. When Roxanne refused to give it to her, appellant
cut Roxanne's face with what Roxanne described as a "silver blade." Appellant told
Roxanne that on the count of five, she wanted the jewelry. Undaunted, Roxanne
refused to give it to her. Appellant left when a vehicle approached the scene.

 Roxanne received twenty-five stitches to close the cut on her face. She
testified that "[T]he doctor said that if she [appellant] would have cut me one more
inch or a couple, maybe like one or two, that I could have died just from bleeding." 
As a result of the cut, she has a scar on her face. She stated that "it's going to be a
scar for life. It ain't going to go away. It's just going to be there, . . . ." She also
testified that she feared retaliation by appellant and said that appellant had a reputation
for being a violent person.

 On cross-examination, she testified she did not mention in her written statement
that appellant cut her with a blade. When counsel asked her if cosmetic surgery could
remove the scar, she replied, "[T]hey had told me something about that, that surgery
can make it, like, go away, like-like it never wasn't there."

 Sierra Reyes testified that on July 19, 2006, she and Alicia Gonzalez were
walking near 19th and Howard when appellant and a girlfriend, "Bubba," accosted
them. Appellant pointed a knife at Alicia and told Sierra, "[I]f you don't take off your
shoes, I'm gonna hurt your friend." Sierra took off her shoes, and Bubba took them
from her. Appellant warned them not to call the police and then took Sierra's
necklaces. Alicia testified that appellant "told my friend, Sierra, that if she didn't give
her her "J's",[ (3)] she was going to kill me right there and then." She also testified that
after Sierra took off her shoes, "she [appellant] just snatched both of her [Sierra's]
necklaces, off her chain. And she said if we called the cops, then she was going to
kill us . . . ."

2. Defense Witnesses

 Appellant testified that prior to the time she cut Roxanne's face, Roxanne and
Elida had "jumped" appellant's sister-in-law, Maria. When appellant saw Roxanne and
Elida at the time in question, she confronted them about the incident with Maria. 
Appellant testified that she and Roxanne "were just exchanging foul language towards
each other, and then it escalated from there." Appellant stated that she cut Roxanne
with "a clear piece of glass." She further testified that she did not realize the extent
of Roxanne's injury. Appellant said she was sorry for hurting Roxanne and that she
was sorry for what she did to Alicia and Sierra. She denied having a knife when she
confronted Sierra and Alicia.

 When defense counsel asked appellant if she had any health issues, she replied,
"I've been admitted into the hospital for depression. They gave me medicine for
depression, anti-depressant." She was hospitalized at Spohn Memorial for two weeks
because she "sliced . . . [her] wrists" and "tried to drink Clorox."

 Appellant's mother testified that appellant had cut her wrist and that she caught
appellant "trying to drink Clorox." Appellant's ex-aunt testified that she did not think
that appellant would benefit from incarceration.




II. Issues


1. Voluntary Plea

 The first issue is whether appellant's nolo contendere plea was knowing and
voluntary. Before a court may accept either a plea of guilty or plea of nolo contendere,
a mentally competent defendant must freely and voluntarily enter the plea. Tex. Code
Crim. Proc. Ann. art. 26.13(b) (Vernon Supp. 2006); Ex parte Battle, 817 S.W.2d 81,
83 (Tex. Crim. App. 1991). A finding that a defendant was duly admonished creates
a prima facie showing that either a plea of guilty or a plea of nolo contendere was
entered knowingly and voluntarily. Martinez v. State, 981 S.W.2d 195, 197 (Tex.
Crim. App. 1998) (per curiam). When the record reflects that a defendant was duly
admonished, the defendant has the burden to demonstrate that he or she did not fully
understand the consequences of the plea such that he or she suffered harm. Id. In
considering the voluntariness of a nolo contendere plea, we must examine the record
as a whole. Id.

 The record from the plea hearing reflects that appellant read the written
admonishments, that she reviewed them with her attorney, that her attorney explained
them to her, that she understood them, that she freely and voluntarily signed the
document containing the written admonishments, that by signing the document
containing the admonishments, she understood that she was giving up valuable and
important rights, that she understood she was waiving her right to a jury trial, that she
understood the punishment range, and that she understood that she was waiving her
right to have the jury assess punishment. Defense counsel advised the court that he
believed she understood the proceedings, the nature of the charges against her, and
the punishment range. When the trial court asked appellant, "To the charge of
aggravated robbery as alleged in the indictment, how do you plead, guilty or not
guilty?," she replied, "No contest." When the trial court asked her if she was pleading
no contest freely and voluntarily, she replied, "Yes, sir." Her responses to the trial
court's questions showed: (1) that the decision to plead no contest was her decision;
(2) that she understood the consequences of her plea; (3) that she was sane; and (4)
that she knew what was going on in the courtroom.

 These recitations are entitled to a presumption of regularity. See Light v. State,
15 S.W.3d 104, 107 (Tex. Crim. App. 2000) (per curiam) ("[A] reviewing court,
absent evidence of impropriety, [must] indulge every presumption in favor of the
regularity of the proceedings and documents in the lower court."). Furthermore, the
admonishments provide a prima facie showing that appellant's plea was knowing and
voluntary. See Martinez, 981 S.W.2d at 197 (finding that defendant was duly
admonished creates prima facie showing that plea of guilty or plea of nolo contendere
was entered knowingly and voluntarily); see also Fuentes v. State, 688 S.W.2d 542,
544 (Tex. Crim. App. 1985) (when the record shows defendant received
admonishment on punishment, this is a prima facie showing that guilty plea was
knowing and voluntary). Because the record shows that appellant was mentally
competent and that she entered her plea freely and voluntarily, we overrule the first
issue.


2. Punishment

 The second issue is whether the trial court erred by sentencing appellant to
sixteen years' imprisonment. Appellant was charged by indictment with aggravated
robbery by use or exhibition of a deadly weapon. Aggravated robbery is a first-degree
felony carrying a punishment range of five to ninety-nine years or life imprisonment
and a maximum fine of $10,000. See Tex. Pen. Code Ann. §§ 12.32(a) & (b),
29.03(b) (Vernon 2003).

 In the present case, the punishment assessed by the trial judge was permissible. 
In fact, it fell in the low end of the statutory punishment range. See id. When the
punishment assessed is within the limits prescribed by the statute, the punishment is
not cruel and unusual within the constitutional prohibition. McNew v. State, 608
S.W.2d 168, 174 (Tex. Crim. App. 1978); Samuel v. State, 477 S.W.2d 611, 614
(Tex. Crim. App. 1972); Rodriguez v. State, 917 S.W.2d 90, 92 (Tex. App.-Amarillo
1996, pet. ref'd). The second issue is overruled.

3. Ineffective Assistance of Trial Counsel

 The third issue is whether trial counsel's failure to present medical testimony
regarding appellant's hospitalization for depression and attempted suicide constituted
ineffective assistance of trial counsel. To establish this claim, a defendant must
satisfy the two-pronged test announced in Strickland v. Washington, 466 U.S. 686,
687-88, 694 (1984). A defendant must show that (1) counsel's representation fell
below an objective standard of reasonableness, and (2) there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different. Id. "A reasonable probability is a probability sufficient to
undermine confidence in the outcome." Id. at 694. To determine whether the test
has been satisfied on appeal, we will judge the totality of counsel's representation and
not focus on isolated acts or omissions. Id. at 690. 

 Further, in a claim of ineffective assistance of counsel, the defendant must
overcome the strong presumption of reasonable professional assistance. Salinas v.
State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). The defendant must prove
ineffective assistance of counsel by a preponderance of the evidence. Stafford v.
State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991); Munoz v. State, 24 S.W.3d
427, 434 (Tex. App.-Corpus Christi 2000, no pet.). The court in Salinas stated, "[t]o
overcome the presumption of reasonable professional assistance, 'any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness.'" Salinas, 163 S.W.3d at 740 (quoting
Thompson v. State, 9 S.W.3d at 813 (citing McFarland v. State, 928 S.W.2d 482,
500 (Tex. Crim. App. 1996))). In most cases, when the record does not provide
explanations for counsel's actions, a silent record will not overcome the presumption. 
Mallet v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

 In the present case, appellant had been hospitalized for depression, and she had
attempted suicide. Trial counsel offered no medical testimony regarding this issue;
rather, he relied upon the testimony of appellant and her mother.

 Appellate review of trial counsel's representation is highly deferential and
presumes counsel's actions fell within the wide range of reasonable and professional
assistance. Garza v. State, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). If
counsel's reasons for his conduct do not appear in the record, and there is at least the
possibility his conduct could have been grounded in legitimate trial strategy, we will
defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct
appeal. Id. Here, counsel's reasons for his actions or intentions do not appear in the
record, and his conduct could have been part of a reasonable trial strategy. Without
more, we must defer to counsel's decisions and deny relief. The third issue is
overruled.

III. Compliance with Anders v. California

 Appellant's court-appointed counsel filed an Anders brief in which she has
concluded that there is nothing that merits review on direct appeal. Anders v.
California, 386 U.S. 738, 744 (1967). Appellant's brief meets the requirements of
Anders. Id. at 744-45; see High v. State, 573 S.W.2d 807, 812 (Tex. Crim. App.
1978). In compliance with Anders, counsel presented a professional evaluation of the
record and referred this Court to what, in her opinion, are all issues which might
arguably support an appeal. See Anders, 386 U.S. at 744; Currie v. State, 516
S.W.2d 684, 684 (Tex. Crim. App. 1974); see also High, 573 S.W.2d at 812. 
Counsel informed this Court that: (1) she had diligently read and reviewed the record
on appeal and has concluded that there is no meritorious ground for either reversal or
modification of the judgment; (2) she has advised appellant by certified mail of her
right to file her own brief; (3) she has furnished appellant with a complete copy of the
record on appeal by certified mail on June 22, 2007; (5) she has furnished appellant
with a copy of appellant's brief, along with a copy of her motion to withdraw as
counsel. See Anders, 386 U.S. at 744-45; see also Stafford v. State, 813 S.W.2d
503, 509 (Tex. Crim. App. 1991); High, 573 S.W.2d at 813. No pro se brief has
been filed with this Court. 

IV. Independent Review

The United States Supreme Court advised appellate courts that upon receiving
a "frivolous appeal" brief, they must conduct "a full examination of all the proceedings
to decide whether the case is wholly frivolous." Penson v. Ohio, 488 U.S. 75, 80
(1988); see Ybarra v. State, 93 S.W.3d 922, 926 (Tex. App.-Corpus Christi 2003,
no pet.). Accordingly, we have carefully reviewed the record and have found nothing
that would arguably support an appeal. See Bledsoe v. State, 178 S.W.3d 824, 826
(Tex. Crim. App. 2005); Stafford, 813 S.W.2d at 509. We agree with counsel that
the appeal is wholly frivolous and without merit. See Bledsoe, 178 S.W.3d at 827-28
("Due to the nature of Anders briefs, by indicating in the opinion that it considered the
issues raised in the briefs and reviewed the record for reversible error but found none,
the court of appeals met the requirements of Texas Rule of Appellate Procedure
47.1."). Accordingly, we affirm the judgment of the trial court. 

V. Motion to Withdraw

 An appellate court may grant counsel's motion to withdraw in connection with
an Anders brief. Moore v. State, 466 S.W.2d 289, 291 n.1 (Tex. Crim. App. 1971);
Stafford, 813 S.W.2d at 511 (noting that Anders brief should be filed with request to
withdraw from case). We grant counsel's motion to withdraw. We order counsel to
advise appellant promptly of the disposition of the case and the availability of
discretionary review. See Ex parte Wilson, 956 S.W.2d 25, 27 (Tex. Crim. App.
1997) (per curiam). 

 The trial court's judgment is affirmed.

 

 

 

 ROSE VELA

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 1st day of November, 2007.
1. On March 12, 2007, the trial court signed a document entitled "Trial Court's Certification of
Defendant's Right of Appeal," in which the court indicated that this case did not involve a plea bargain
and that appellant has the right of appeal.
2. Without objection, the trial court admitted the stipulated evidence as State's Exhibit No. 1. 
Texas has a procedural requirement that the State must offer sufficient proof to support a judgment
based on either a plea of guilty or a plea of nolo contendere in a felony case. See Tex. Code Crim. Proc.
Ann. art. 1.15 (Vernon 2005).
3. Alicia testified that appellant was referring to Sierra's "Jordans," a reference to the brand of
shoes, which Sierra was wearing.