ACCEPTED
03-15-00024-CR
7228259
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/5/2015 1:23:00 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00024-CR**

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/5/2015 1:23:00 PM
JEFFREY D. KYLE
Clerk

_____

On Appeal from the 368th Judicial District Court of
Williamson County, Texas
Cause Number 13-0686-K277

_____

**STEVEN ANTHONY ROE, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**MOTION TO WITHDRAW AS COUNSEL
WITH *ANDERS* BRIEF IN SUPPORT**

_____

*Counsel for Appellant*
*Steven Anthony Roe*

**KRISTEN JERNIGAN**
ATTORNEY AT LAW
STATE BAR NUMBER 90001898
207 S. AUSTIN AVE.
GEORGETOWN, TEXAS 78626
(512) 904-0123
(512) 931-3650 (FAX)
Kristen@txcrimapp.com

## IDENTIFICATION OF PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Appellant:**

Steven Anthony Roe

**Counsel for Appellant**:

Robert McCabe (at trial)
207 S. Austin Ave.
Georgetown, Texas 78626

Gregory K. Simmons (at trial)
714 N. 4th Street
Killeen, Texas 76541

Kristen Jernigan (on appeal)
207 S. Austin Ave.
Georgetown, Texas 78626

**Counsel for Appellee, The State of Texas:**

Elizabeth Whited (at trial)
Danny Smith (at trial)
John Prezas (on appeal)
Williamson County
Assistant District Attorneys
405 Martin Luther King
Georgetown, Texas 78626

**Trial Court Judge:**

The Honorable Rick Kennon
368th Judicial District Court

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

PROFESSIONAL EVALUATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

POTENTIAL ERRORS CONSIDERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

NOTICE TO APPELLANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

# INDEX OF AUTHORITIES

**FEDERAL CASES**

*Anders v. California*, 386 U.S. 738 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*McCoy v. Court of Appeals of Wisconsin, District I*, 486 U.S. 429 (1988). . . .15, 16

*Jackson v. Virginia*, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

**TEXAS CASES**

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . .18, 19

*Gaines v. State*, 479 S.W.2d 678 (Tex. Crim. App. 1972) . . . . . . . . . . . . . . . . . .21

*Hawkins v. State*, 112 S.W.3d 340 (Tex. App. - Corpus Christi 2003) . . . . . . . . . 16

*Jordan v. State,* 495 S.W.2d 949 (Tex. Crim. App. 1973) . . . . . . . . . . . . . . . . . .21

*Samuel v. State*, 477 S.W.2d 611 (Tex. Crim. App. 1972) . . . . . . . . . . . . . . . . . .21

*Wilson v. State*, 40 S.W.3d 192 (Tex. App. – Texarkana 2001). . . . . . . . . . . . . . 15

**STATUTES AND RULES**

TEX. CODE CRIM. PRO. 57.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. PENAL CODE § 12.42(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. PENAL CODE § 22.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 18

TEX. PENAL CODE § 22.021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 19

TEX. R. APP. P. 38.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TEX. R. APP. P. 39.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 39.1, Oral argument is not applicable in the present case.

No. 03-15-00024-CR

In the
**COURT OF APPEALS**
for the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

———————————————————————————

On Appeal from the 368th Judicial District Court of
Williamson County, Texas
Cause Number 13-0686-K277

———————————————————————————

**STEVEN ANTHONY ROE, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

———————————————————————————

*ANDERS* **BRIEF IN SUPPORT**
**OF MOTION TO WITHDRAW AS COUNSEL**

———————————————————————————

## STATEMENT OF THE CASE

On June 20, 2013, Appellant was indicted for one count of the felony offense of aggravated assault with a deadly weapon and one count of the felony offense of aggravated sexual assault.[1] (CR: 25). On December 11, 2014, a jury found Appellant guilty of the offenses of aggravated assault with a deadly weapon and aggravated sexual assault. (CR:). The jury assessed Appellant's

———————————

[1] Appellant was re-indicted on September 25, 2014. (CR: 105, 108). The indictment included more specific language regarding the manner and means of the commission of the offense. (CR: 87).

1

punishment at life in prison on both counts. (CR: 126-27). Appellant timely filed notice of appeal on December 15, 2014. (CR: 135). This appeal results.

## STATEMENT OF FACTS

At trial, Mark Hasty testified that in the early morning hours of April, 9, 2013, he woke to hear a "really loud, bloodcurdling scream." (RR4: 26). Hasty looked out his apartment window and saw Appellant standing over S.C.,[2] pummeling her with his fists. (RR4: 29-30, 32-33). Hasty told his roommate to call 911 and went outside with a rifle. (RR4: 31). Hasty pointed the rifle at Appellant and said, "hey, stop, get off of her." (RR4: 31). Appellant then picked S.C. up in a chokehold, used her as a shield, and said, "you're going to have to kill us both." (RR4: 31). Appellant then dragged S.C. back into her apartment. (RR4: 35). S.C. was gurgling and appeared lifeless. (RR4: 35-36). Hasty did not think she was going to live. (RR4: 35).

John Pisciotta testified that on April 9, 2013, he woke up and heard screaming. (RR4: 54). He and his roommate, Hasty, ran outside and Pisciotta saw Appellant assaulting S.C. (RR4: 54). S.C. was trying to scream for help, but she could not. (RR4: 54). Hasty picked up his rifle and went outside while Pisciotta called 911. (RR4: 55-56). Pisciotta then joined Hasty outside and saw

---

[2] The complainant in this case will be referred to as "S.C." in accordance with Texas Code of Criminal Procedure Article 57.02.

Appellant had S.C. pinned down. (RR4: 61). S.C. was "defenseless" and Appellant was hitting her in the face. (RR4: 61). Appellant then dragged S.C. back into her apartment. (RR4: 63).

Charles Whites testified that he is a patrol officer with the Round Rock Police Department and was dispatched to a disturbance call at approximately 1:30 a.m. on April 9, 2013. (RR4: 101). When he arrived, he was informed that Appellant had dragged S.C. into Apartment 603, so Whites and another officer knocked on the door but there was no answer. (RR4: 104-05). Whites found an open window and entered the apartment to render aid to S.C. who was thought to have suffered serious bodily injury after being dragged into the apartment against her will. (RR4: 105). When he entered the apartment, Whites observed a woman lying on the floor who was "clearly seriously injured." (RR4: 107). She was bleeding from the mouth, had a laceration, was unconscious, had been badly beaten, and had torn clothes. (RR4: 107). Whites also observed broken furniture and other items that were out of place including a damaged pot and a large kitchen knife that had blood on it. (RR4: 108, 115). Whites called EMS immediately and turned S.C. on her side so she would not choke on the blood coming from her face and mouth. (RR4: 121).

3

Michael Krogmann, a sergeant with the patrol division of the Round Rock Police Department, told the jury that on April 9, 2013, he responded to a scene where a woman had been stabbed. (RR4: 169-70). When he arrived, Krogmann observed S.C. lying on the floor covered in blood. (RR4: 171). Krogmann, a former medic, evaluated S.C.'s medical condition and found she had puncture wounds to her back, her nose was bloodied and swollen, and a laceration behind her ear. (RR4: 173).

Brett Wimsatt, a paramedic with Williamson County Emergency Medical Services, testified that on April 9, 2013, he was dispatched to an assault case where the victim was unconscious. (RR4: 195-96). When he arrived, Wimsatt observed S.C. lying on the ground. (RR4: 198). S.C. had "a significant amount of blood on her person, on her face, chest, arms, and even down to her legs." (RR4: 198). Wimsatt assessed her medical condition and transported her to the hospital so that a trauma team could more thoroughly evaluate S.C. (RR4: 205-06).

S.C. testified that she met Appellant through an acquaintance, Appellant's stepmother. (RR5: 15). At the time they met, S.C. was twenty-nine years old and Appellant was nineteen years old. (RR5: 15). After talking for several hours and "hitting it off" with Appellant and his stepmother, S.C. spent the night at

4

their home. (RR5: 18). The next morning, Appellant asked to go home with S.C. and she agreed. (RR5: 18). The two "hung out" during the day and S.C. bought Appellant some shirts, food, and a movie. (RR5: 20). That night S.C. attended a show where Appellant was featured as a singer. (RR5: 21). The two spent two more days together and their relationship became intimate. (RR5: 22-23). On the third night, S.C. agreed to take Appellant to his father's house but when she could not find her car keys, Appellant became very angry. (RR5: 23-24). Appellant began beating her in the face with his fists, punched her, bit her, and raped her with a knife to her throat. (RR5: 25). Appellant told S.C. he was going to kill her and S.C. believed him. (RR5: 25-26). S.C. thought she would not make it out of her apartment alive so she ran outside to try to get someone's attention. (RR5: 26). S.C. screamed for her life and Appellant ran after her, beating her and dragging her back into her apartment. (RR5: 26). The next thing S.C. remembered was the paramedics arriving to help her. (RR5: 26). The whole altercation lasted over four hours. (RR5: 26). S.C. was transported to the hospital where she remained for five days. (RR5: 29). Part of that time, S.C. was in ICU because of bleeding in her brain. (RR5: 30). S.C. had fractures in her face, a broken nose, stitches on her neck, multiple lacerations, and lost the hearing in her right ear. (RR5: 30).

5

On cross-examination, S.C. agreed that she was actually thirty years old when she met Appellant and that he could have been eighteen years old. (RR5: 62-63). S.C. also agreed that Appellant had been drinking vodka straight out of the bottle on the day he attacked her and that he got the vodka from her refrigerator. (RR5: 65). S.C. admitted that in her initial statement to police, her sequence of events was incorrect and that she said Appellant did not use a weapon when he sexually assaulted her. (RR5: 70).

Dr. Christopher Thompson testified that he was on duty in the emergency room of the Round Rock Medical Center on April 9, 2013, and treated S.C. (RR5: 125). Upon initial examination, S.C. had serious bruising and swelling to her face, blood coming from her ear, bruises all over her body and a broken nose. (RR5: 127-31). S.C. also had bleeding in her brain so a neurosurgeon and a trauma surgeon were called. (RR5: 132). S.C. was diagnosed with a subdural hematoma which carried the risk for death, disability, vision loss, and memory loss. (RR5: 134-35).

Evangeline Barefoot, a sexual assault nurse examiner, testified that she examined S.C. on April 9, 2013, and during that examination, S.C. reported that Appellant sexually assaulted her and held a kitchen knife to her throat during the assault. (RR5: 152-53). Barefoot noted that S.C. had abrasions and "tearing

type injuries" to her vagina which appeared to be the result of force. (RR5: 171-72). Barefoot took vaginal swabs as evidence which were ultimately submitted to the Texas Department of Public Safety Crime Lab. (RR5: 170, 210-15).

Detective Todd Forister with the Round Rock Police Department told the jury that he visited with S.C. in the hospital and she named Appellant as the person who assaulted her. (RR5: 216). A photo lineup was prepared and shown to S.C. and she identified Appellant out of the photo lineup. (RR5: 218-19). A few days later, Forister determined that Appellant had been captured and was confined in the Travis County Jail, so Forister traveled to the jail to interview Appellant. (RR5: 219-20, 222). Appellant waived his *Miranda*[3] rights and agreed to speak to Forister who recorded the interview. (RR5: 220-21). The interview was played for the jury in which Appellant "accepted full responsibility" for the assault on S.C. (RR5: 228-29). When Forister first spoke with Appellant, Appellant asked, "is she alive?" (RR5: 229). Forister obtained a search warrant and took a sample of Appellant's DNA. (RR5: 231). On cross-examination, Forister clarified that Appellant did not admit to sexually assaulting S.C., and only confessed to the assault on S.C. (RR6: 43).

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

7

Allison Heard, a technician with the Texas Department of Public Safety Crime Lab, testified that she examined the vaginal swabs collected from S.C. (RR6: 58). Heard determined that one of the swabs contained a mixture of DNA. (RR6: 58). Heard compared the DNA samples from S.C. and Roe with the mixture and determined that the mixture was consistent with the DNA profiles of S.C. and Roe. (RR6: 59). Heard determined further that the probability of an unrelated person contributing to the mixture was "1 in 190.3 million for Caucasians, 1 in 1.174 billion for Blacks, and 1 in 105.8 million for Hispanics." (RR6: 59). At the conclusion of Heard's testimony, the State rested its case in chief. (RR6: 64).

A bench conference was had wherein Defense Counsel proffered for the Court that he had met with Appellant more than fourteen times at the Williamson County Jail and had fully explained Appellant's rights including his right to testify. (RR6: 66). Appellant agreed with Defense Counsel's proffer. (RR6: 67). Defense Counsel explained that he had informed Appellant on many occasions that it was Appellant's decision as to whether or not to testify and Appellant agreed that Defense Counsel had, in fact, relayed that information. (RR6: 67). When asked if he wished to testify, Appellant repeatedly stated, "I don't know." (RR6: 67, 68, 70). Defense Counsel then stated that it was his advice for over a year, based on

the facts of the case and Appellant's criminal history, that Appellant not testify, but again, Appellant would not make a decision as to whether he wanted to testify. (RR6: 67-68). Appellant agreed that had been Defense Counsel's advice for over a year. (RR6: 68). When Appellant still would not make a decision, the Court informed Appellant that only he could make the decision whether or not he would testify. (RR6: 68). Ultimately, Appellant would not make the decision as to whether he would testify so Defense Counsel invoked Appellant's Fifth Amendment Right not to testify on Appellant's behalf. (RR6: 70).

When the jury returned, the Defense rested its case in chief. (RR6: 73). The jury deliberated and found Appellant guilty of aggravated assault with a deadly weapon and aggravated sexual assault. (RR6: 121).

At the punishment phase of trial, Appellant pleaded true to a prior felony conviction for harassment of a public servant. (RR6: 122). Appellant then stipulated to evidence that he was adjudicated or convicted of the following offenses: (1) assault causing bodily injury; (2) criminal mischief; (3) harassment of a public servant; (4) assault bodily injury – family violence; (5) interference with an emergency call; and (6) assault family violence – strangulation. (RR6: 129-30). Appellant also stipulated that he was previously committed to the Texas Youth Commission and the Texas Department of Criminal Justice. (RR6: 130).

9

Officer Wade Boling of the Travis County Sheriff's Office gang intelligence unit testified that while Appellant was confined in the Travis County Jail, he interviewed Appellant to determine if he was affiliated with a gang because of the tattoos on his face and body. (RR6: 133-34). Appellant had a red dog paw tattooed on his cheek which indicated to Boling that Appellant was a member of the "Blood" gang. (RR6: 137). During the interview, Appellant admitted that he was a "Blood" and a "5/9 Bounty Hunter Blood." (RR6: 135).

The Court then adjourned for the day. (RR6: 147). The next morning, the Court heard testimony from a Williamson County jailer that Appellant refused to leave his cell at the Williamson County Jail and refused to participate in trial proceedings. (RR7: 8-9). Appellant ultimately agreed to be transported to Court but would not dress in his civilian clothing and once he reached the courthouse, would not leave the holding cell adjacent to the courtroom. (RR7: 10-11).

Defense Counsel stated for the Court:

Throughout the week Mr. Roe -- and even prior to today, we even had a court hearing several months back where Mr. Roe had threatened to shut down, essentially, and refuse to cooperate with assisting counsel in his own defense. This week he has been cooperative. He has come out, he has spoken with us, although it has not always been easy getting him to cooperate as far as participating in his trial. This morning, when we received this information by phone from the court at approximately 8:00, Mr. Simmons and I were here before 8:30, we both went to the back, we spoke with Mr. Roe about coming out. He steadfastly refuses to come out. He is dressed in a Williamson County

10

Jail uniform with leg restraints. He refuses to participate in the trial in any fashion. It appears to be voluntary. There's nothing physically wrong with him that's keeping him from coming out into the courtroom to participate. Mr. Simmons and I have both, on numerous occasions, both today and prior to today, advised him that it is in his best interest to participate with the trial and that it would be detrimental to any defense that we would have for him, should he not participate. Regardless of that advice, Mr. Roe has refused to participate in the trial, against counsel's advice.

(RR7: 13-14). The parties agreed to an instruction, which the Court gave to the jury as follows: "The Defendant is not present but, despite his absence, we are going to go ahead and proceed with the punishment phase of the trial. (RR7: 15).

Deputy Michael Honeycutt of the Travis County Sheriff's Office then detailed a disturbance he investigated on April 13, 2012, in which Appellant assaulted and strangled his then girlfriend when she refused to kiss him. (RR7: 17-21). The victim's cellphone was found at the bottom of a nearby swimming pool. (RR7: 23). Appellant was later arrested for the offenses of assault causing bodily injury and interference with an emergency telephone call. (RR7: 23).

Before the State called its next witness, audible screams were heard from the holding cell. (RR7: 26). The screams were heard by everyone, including the jury, so Appellant was moved to a holding cell in another courtroom. (RR7: 26). Appellant continued to disrupt other proceedings in the courthouse, so Appellant was moved back to the Williamson County Jail with instructions that if Appellant

11

chose to rejoin the proceedings, the jail staff would notify the Court immediately. (RR7: 28-29, 31-33).

Officer Brian Borget with the Austin Police Department related that on May 11, 2012, he responded to a call where a woman had been assaulted. (RR7: 43). The woman identified Appellant as the man who assaulted her and Appellant was found in her house. (RR7: 43). Borget spoke to Appellant who admitted to hitting the woman. (RR7: 44). After Borget's investigation, Appellant was arrested for assault family violence – strangulation. (RR7: 46). Appellant was placed on probation for that offense, but his probation was later revoked. (RR7: 48).

Balee Hall testified that she met Appellant through FaceBook when he was eighteen years old and she was thirty years old. (RR7: 52-54). They met on Christmas Day, 2012. (RR7: 54). Hall and her daughter had nowhere to stay, so Appellant invited them to his grandmother's house. (RR7: 54). That night, Hall became intimate with Appellant and had sexual intercourse with him. (RR7: 54). The two dated for approximately a month. (RR7: 58). Then, in February of 2013, Appellant came to Hall's place of employment, Chica Bonitas, where she was a dancer. (RR7: 57-60). Appellant asked Hall to get into the car with himself and his new girlfriend. (RR7: 60). Hall "hesitantly" complied and they

drove to the hotel where she and her daughter were staying. (RR7: 61). Appellant had sex with her and took her money from her for the second day in a row. (RR7: 63-64). Hall called the police after he left and reported that Appellant had sexually assaulted her and robbed her. (RR7: 64). Hall then detailed two other incidents in which Appellant assaulted her. (RR7: 64-75). During his final assault on Hall, Appellant punched her and blood dripped from her face. (RR7: 79). Hall escaped through a window and was treated at the hospital for her injuries, which included twelve stitches above her eye. (RR7: 80-83). On cross-examination, Hall admitted that she did not press charges for anything Appellant had done to her. (RR7: 99). Hall admitted further that she never turned Appellant into the police and visited Appellant while he was in the Travis County Jail. (RR7: 108-11). In addition, Hall had several telephone conversations with Roe while he was incarcerated. (RR7: 111).

The jury then heard testimony that Appellant attacked two fellow middle school students and a teacher and was expelled because school staff feared he would sexually attack other students. (RR7: 120-30, 137-38, 144).

Appellant then decided to rejoin the proceedings but refused to answer the Court when asked if he understood he would need to remain respectful and refrain from any outbursts. (RR7: 141-42). The Court advised Appellant that he would

13

be allowed to remain in the courtroom as long as he did not disrupt the proceedings. (RR7: 142).

S.C. took the stand again and detailed the stress and anxiety she has suffered since Appellant attacked her. (RR7: 160-65). The State then rested its case on punishment. (RR7: 166).

Outside the presence of the jury, Appellant was asked if he wished to testify at the punishment phase of trial. (RR7: 167). Appellant again refused to decide, so Defense Counsel invoked his Fifth Amendment right not to testify on Appellant's behalf. (RR7: 167).

Regina Roe testified that she is Appellant's grandmother and that both of Appellant's parents had criminal histories and problems with drugs and alcohol. (RR7: 171-72). Appellant was taken from his parents by Child Protective Services when he was six years old because of neglect. (RR7: 174). Since that time, Appellant was separated from his brothers and sisters and was placed in over fifteen foster homes. (RR7: 175, 177). When Appellant was twelve or thirteen years old, he went to live with Regina. (RR7: 179). Regina related that Appellant suffers from bipolar disorder and ADHD. (RR7: 179-80).

After deliberating, the jury sentenced Appellant to life in prison on each count. (RR7: 207-08).

## ISSUE PRESENTED

**Whether the Instant Appeal Is Frivolous and Without Merit, Such That the Undersigned Should Withdraw as Counsel.**

A criminal defense attorney's duty is to zealously represent the interests of his or her client on appeal. *Anders v. California*, 386 U.S. 738, 744 (1967). If the appointed attorney finds the "case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." *Anders*, 386 U.S. at 744.

Both retained and appointed appellate attorneys have a "duty to withdraw" as counsel when they conclude that an appeal would be frivolous, but appointed counsel "is presented with a dilemma because withdrawal is not possible without leave of court, and advising the court of counsel's opinion that the appeal is frivolous would appear to conflict with the advocate's duty to the client." *McCoy v. Court of Appeals of Wisconsin, District I*, 486 U.S. 429, 437 (1988). "It is well settled, however, that this dilemma must be resolved by informing the court of counsel's conclusion." *Id.* "Under *Anders* and its progeny, if an appointed attorney concludes that his client's appeal is without merit, he or she must (1) so inform the court, (2) seek permission to withdraw, and (3) file a brief 'referring to anything in the record that might arguably support the appeal.'" *Wilson v. State*, 40 S.W.3d 192, 196 (Tex. App. - Texarkana 2001).

15

As the Supreme Court explained, the attorney's motion to withdraw must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. *Anders*, 386 U.S. at 744. A copy of counsel's brief should be provided to the Appellant and time should be allowed for him to raise any points that he chooses. *Id.* Then, the Court, and not counsel, decides, after a full examination of all the proceedings, whether the case is wholly frivolous. *Id.* If it so finds, it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. *Anders*, 386 U.S. at 744. In Texas, an *Anders* brief need not specifically advance "arguable" points of error if counsel finds none, but it must provide record references to the facts and procedural history and set out pertinent legal authorities. *See Hawkins v. State*, 112 S.W.3d 340, 343-344 (Tex. App.–Corpus Christi 2003). The attorney's duty to withdraw is based upon his or her professional and ethical responsibilities as an officer of the court not to burden the judicial system with false claims, frivolous pleadings, or burdensome time demands. *McCoy*, 486 U.S. at 436. The Supreme Court instructs: "Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing party by advancing frivolous arguments. An attorney, whether appointed or paid,

16

is therefore under an ethical obligation to refuse to prosecute a frivolous appeal."

*Id.*

## PROFESSONAL EVALUATION

Counsel would respectfully show the Court of Appeals that the instant appeal is frivolous and without merit, for the following reasons:

The trial court had jurisdiction over the present felony case and venue was proper in Williamson County, where the offenses were alleged to have occurred. A jury found Appellant guilty of the offenses alleged in the indictment, namely: aggravated assault with a deadly weapon and aggravated sexual assault. TEX. PENAL CODE §§ 22.02(B)(1), 22.021. The punishment for those offenses, as alleged in the indictment, and the penalty paragraph therein, is that of not less than fifteen years nor more than ninety-nine years or life in prison. TEX. PENAL CODE § 12.42(c). The jury sentenced Appellant to life in prison which is within the statutory range of punishment. TEX. PENAL CODE § 12.42(c), 22.02, 22.021.

## POTENTIAL ERRORS CONSIDERED BY COUNSEL

Counsel considered the following point of errors on appeal:

(1)     Whether the evidence was sufficient to support Appellant's conviction for aggravated assault with a deadly weapon.

It is counsel's opinion that the evidence in this case was sufficient to support Appellant's conviction. The Court of Criminal Appeals announced in 2010 that

17

the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 320 (1979), is the only standard that a reviewing court should apply when determining the sufficiency of the evidence. *Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010). When reviewing the legal sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896.

A person commits the offense of aggravated assault with a deadly weapon, as alleged in the indictment, if the person: intentionally, knowingly or recklessly causes serious bodily injury to another and, during the commission of the offense, uses or exhibits a deadly weapon. TEX. PENAL CODE § 22.02; (CR: 85).

In this case, the jury heard evidence that Appellant repeatedly beat S.C. and exhibited a knife and/or used a pot during the assault. S.C. suffered severe injuries, including bleeding of the brain and permanent hearing loss as a result of Appellant's attack. Therefore, it is counsel's opinion that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896.

18

(2)    Whether the evidence was sufficient to support Appellant's conviction for aggravated sexual assault.

It is counsel's opinion that the evidence in this case was sufficient to support Appellant's conviction.    The Court of Criminal Appeals announced in 2010 that the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 320 (1979), is the only standard that a reviewing court should apply when determining the sufficiency of the evidence.    *Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010).    When reviewing the legal sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.    *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896.

A person commits the offense of aggravated sexual assault, as alleged in the indictment, if the person: intentionally or knowingly causes the penetration of the female sexual organ of the victim with the defendant's male sexual organ, without the victim's consent, and during the commission of the offense, uses or exhibits a deadly weapon.    TEX. PENAL CODE § 22.021; (CR: 85).

In this case, the jury heard evidence that Appellant penetrated S.C.'s female sexual organ with his male sexual organ without S.C.'s consent.    In addition, the jury heard evidence that Appellant held a knife to S.C.'s throat as he sexually

19

assaulted her. Therefore, it is counsel's opinion that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896.

(2)     Whether Appellant was competent to stand trial.

Prior to trial, Defense Counsel requested in writing that Appellant be evaluated for competency to stand trial. After he was evaluated, the following was made part of the Court's record at a pre-trial hearing in this case:

| THE COURT: | Okay. And do you believe, based on your conversations with your client, that he is competent and understands these proceedings? |
| --- | --- |
| MR. MCCABE: | He has been examined for competency and sanity. The opinion was that he was sane at the time, and he is competent. I do not nor have I ever had any concerns about his competency, so I do believe he is competent. |
| THE COURT: | Okay. And is he able to – or has he been able to, I guess, aid in his defense when you have met with him and discussed the case with him? |
| MR. MCCABE: | Yes, Your Honor. |

(RR2: 5). Based on the foregoing, it is counsel's opinion that Appellant's competency was evaluated and he was found to be competent to stand trial.

(4)     Whether Appellant's sentence exceeded the proper range of punishment.

It is counsel's opinion that the punishment assessed was not excessive because Appellant's punishment fell within the statutory punishment range for the offense alleged. A punishment which falls within the statutory range is not excessive, cruel, or unusual. *Gaines v. State*, 479 S.W.2d 678, 679 (Tex. Crim. App. 1972). *See also Jordan v. State* 495 S.W.2d 949, 952 Tex. Crim. App. 1973; *Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972).

## CONCLUSION

There are no points of error which, in good conscience, could be raised in this appeal.

## NOTICE TO APPELLANT

The undersigned has forwarded a copy of this motion to withdraw and a letter explaining Appellant's rights, as well as the procedures to be followed when a brief is filed by counsel indicating that the appeal is frivolous and without merit, to Appellant. The letter also informs Appellant of his right to file a *pro se* petition for discretionary review. In addition to the letter, the undersigned has also forwarded to Appellant a Motion for *Pro Se* Access to the Appellate Record so that Appellant can obtain the necessary records to file a brief, should he choose

to do so.    A true and correct copy of such letter is attached hereto.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Kristen Jernigan, court-appointed counsel for Appellant in the above styled and numbered cause respectfully prays that, after providing Appellant an opportunity to submit a *pro se* brief, this Honorable Court of Appeals will review the appellate record to make an independent determination of whether there are grounds upon which to appeal. The undersigned also prays that the Court will grant this motion to withdraw.

Respectfully submitted,


____/s/ Kristen Jernigan_____
KRISTEN JERNIGAN
State Bar Number 90001898
207 S. Austin Ave.
Georgetown, Texas 78626
(512) 904-0123
(512) 931-3650 (fax)
Kristen@txcrimapp.com

22

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing *Anders* Brief in Support of Motion to Withdraw as Counsel has been emailed to the Appellate Attorney for the Williamson County District Attorney's Office, John Prezas, at jprezas@wilco.org on October 5, 2015.


_____/s/ Kristen Jernigan_____
Kristen Jernigan


**CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies that the foregoing document consists of 6,283 words in compliance with Texas Rule of Appellate Procedure 9.4.


_____/s/ Kristen Jernigan_____
Kristen Jernigan

ACCEPTED
03-15-00024-CR
7228238
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/5/2015 1:22:29 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00024-CR**

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

_____

On Appeal from the 368th Judicial District Court of
Williamson County, Texas
Cause Number 13-0686-277

_____

**STEVEN ANTHONY ROE, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**MOTION TO WITHDRAW AS COUNSEL**

_____

**CERTIFICATE OF COUNSEL**

In compliance with the requirements of *Anders v. California*, 386 U.S. 378

(1967), I, Kristen Jernigan, court-appointed counsel for appellant, Steven Anthony

Roe, in the above-referenced appeal, do hereby verify, in writing, to the Court that

I have:

1. notified appellant that I filed a motion to withdraw as counsel with an

    accompanying *Anders* brief, and provided a copy of each to appellant;

1

2. informed appellant of his right to file a *pro se* response identifying what he believes to be meritorious grounds to be raised in his appeal, should he so desire;

3. advised appellant of his right to review the appellate record, should he wish to do so, preparatory to filing that response;

4. explained the process for obtaining the appellate record, provided a Motion for *Pro Se* Access to the Appellate Record lacking only appellant's signature and the date, and provided the mailing address for this Court; and

5. informed appellant of his right to seek discretionary review pro se should this Court declare his appeal frivolous.

Respectfully submitted,

_____/s/ Kristen Jernigan_____
KRISTEN JERNIGAN
State Bar Number 90001898
207 S. Austin Ave.
Georgetown, Texas 78626
(512) 904-0123
(512) 931-3650 (fax)
Kristen@txcrimapp.com

ACCEPTED
03-15-00024-CR
7223932
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/5/2015 11:05:51 AM
JEFFREY D. KYLE
CLERK

# KRISTEN JERNIGAN
## ATTORNEY AT LAW
## 207 S. AUSTIN AVE., GEORGETOWN, TEXAS 78626
## (512) 904-0123 (OFFICE)    (512) 931-3650 (FAX)
## KRISTEN@TXCRIMAPP.COM

October 5, 2015

Steven Anthony Roe
TDCJ ID No. 01977151
McConnell Unit
3001 S. Emily Drive
Beeville, Texas 78102

VIA CERTIFIED MAIL # 7014 2120 0004 0004 1558

Dear Mr. Roe:

Enclosed, please find a copy of the *Anders* Brief and Motion to Withdraw as Counsel I have prepared and filed in your case. After a diligent search of both the Clerk's Record and the Reporter's Record in your case and the applicable law, it is my opinion that no reversible error occurred during your trial.

Whenever appellate counsel files a motion such as this, the law provides the Appellant the right to review the record of the proceedings and file any brief which he or she deems necessary. Because I have submitted such a brief, you now have the right to review the record of your trial and file any brief which you deem necessary.

In order to obtain the appellate record to prepare your brief, I have attached a Motion for Pro Se Access to the Appellate Record for you to file. You must sign and date the motion and mail it to the Court of Appeals within ten days of the date of this letter to this address:

Third Court of Appeals:

Jeffrey D. Kyle
Clerk, Third Court of Appeals
Post Office Box 12547
Austin, Texas 78711

Should the Court of Appeals ultimately rule your appeal was frivolous, and affirm your conviction and sentence, you may file a *Pro Se* Petition for Discretionary Review with the Texas Court of Criminal Appeals. The address to file your petition is:

Texas Court of Criminal Appeals:

Hon. Abel Acosta
Clerk of The Court
Texas Court of Criminal Appeals
P.O. Box 12308
Austin, Texas 78711

I have included the relevant Rules of Appellate Procedure for filing a petition for discretionary review. You must file your petition within thirty days of the date of the Court of Appeals' opinion or request an extension of time to file your petition. Be sure to attach a copy of the Court's opinion to your petition should you choose to file one.

Feel free to write me if you have any questions. I will do my best to answer any questions you may have.

Sincerely,

/s/ Kristen Jernigan

Kristen Jernigan

No. 03-15-00024-CR

In the
COURT OF APPEALS
For the
THIRD SUPREME JUDICIAL DISTRICT
at Austin

---

On Appeal from the 368th Judicial District Court of
Williamson County, Texas
Cause Number 13-0686-277

---

STEVEN ANTHONY ROE, Appellant
*v.*
THE STATE OF TEXAS, Appellee

---

MOTION FOR *PRO SE* ACCESS TO APPELLATE RECORD

---

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

COMES NOW, Steven Anthony Roe, Appellant herein, and files this, his Motion for *Pro Se* Access to Appellate Record. In support of said motion, Appellant would show the Court the following:

Appointed Counsel for Appellant has filed an *Anders* Brief and Motion to Withdraw. Pursuant to the Texas Court of Criminal Appeals' recent decision in *Kelly v. State*, No. PD-0702-13 (Delivered June 25, 2014), Appellant now requests access to the appellate record for the preparation of his *pro se* response.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Appellant respectfully requests that this Court grant his Motion for *Pro Se* Access to the Appellate Record.

Respectfully submitted,

_____

Steven Anthony Roe

DATE:_____